Reversed and Remanded and Opinion filed October 31, 2006








Reversed
and Remanded and Opinion filed October 31, 2006.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00488-CV 

NO. 14-05-00489-CV

____________

 

MICHAEL SKADDEN, Appellant

 

V.

 

ANA MARIA TARQUIS ALFONSO, Appellee

 



 

On Appeal from the 246th
District Court

Harris County, Texas

Trial Court Cause Nos. 99-19105
& 99-19105A

 



 

O P I N I O N








More than four years after the trial court=s divorce decree
became final, appellant instituted proceedings in the trial court to enforce
the decree against his ex-wife.  The trial court granted the ex-wife=s motion to
dismiss the enforcement actions based on the court=s conclusion that she
was never validly served with process in the underlying divorce action.  The
trial court erred in dismissing the enforcement actions because, after the time
expired for filing a motion for new trial and direct appeal, a restricted
appeal or a bill of review were the only available procedural avenues for the
ex-wife to attack the decree based on an alleged failure to effect valid
service of process on her.  We cannot affirm the trial court=s dismissal orders
based on its alleged lack of subject-matter jurisdiction over child custody
issues because the record before the trial court from the underlying divorce
action did not negate the existence of facts essential to the trial court=s subject-matter
jurisdiction over child custody issues.  Therefore, we reverse the trial court=s orders
dismissing the enforcement actions, and we remand for further proceedings
consistent with this opinion.

                        I.  Factual and Procedural Background

On or about March 15, 1999, appellee Ana Maria Tarquis
Alfonso (ATarquis@) instituted the
Spanish equivalent of divorce proceedings in a court in Madrid, Spain.[1] 
About a month later, on April 14, 1999, Skadden filed a petition for divorce in
the trial court below.  This petition contains an affidavit from Skadden
stating that the only child of the marriage, Benjamin, has lived in Spain from
birth until April 14, 1999, except for 25 days he spent in Houston, Texas, in
September 1998.  The record indicates that Skadden, after filing the Texas
divorce action, tried to serve Tarquis (1) under the Hague Convention, (2)
through personal service by a person authorized by the trial court under Texas
Rule of Civil Procedure 103, (3) through service by registered mail sent to
Tarquis=s address in
Spain, and (4) through service by publication in the Daily Court Review. 
Skadden alleges that he sent a copy of the petition and citation by regular air
mail to Tarquis at her residence address in Madrid in November 1999.  








The Texas Proceeding

On December 13, 1999, the Texas divorce case was called to
trial.[2] 
Skadden appeared along with counsel.  Tarquis did not appear in person or
through counsel.  The record reflects that evidence was presented at trial;
however, we do not know what evidence was presented.  Although a record was
made of the trial, no party asked the court reporter to transcribe her notes. 
Eventually, the court reporter discarded her notes of the trial without ever
having transcribed them.  See Tex.
Gov=t Code Ann. ' 52.046(a)(4) (Vernon 2005) (requiring
court reporters to preserve their notes for only three years from the date on
which they were taken).  Thus, there is no trial record for this court to
review.

After trial, Skadden presented to the associate judge a
proposed final divorce decree, which both Skadden and his counsel approved as
to form and substance.  The associate judge reviewed the proposed decree, made
various revisions to it, and then approved it as the decree he recommended the
trial judge to sign.  On December 22, 1999, the presiding judge of the trial
court signed the decree recommended by the associate judge without making any
changes to it (hereinafter the ATexas Decree@).  The Texas
Decree adjudicated property and child custody issues, and it states, among
other things, as follows:

Based upon the evidence presented, the Court finds
that [Tarquis] had adequate notice of these proceedings[.] Due process of law
has been satisfied[.]  [Tarquis] is wholly in default[.]

The Court, after receiving evidence, finds
that it has jurisdiction of this case.  All prerequisites to the exercise of
its jurisdiction have been duly complied with . . .

. . .

The Court finds that [Skadden] and [Tarquis] are the
parents of only one child:

Name[:]        Benjamin
Skadden-Tarquis

Sex[:]           Male








Birthplace[:]  Madrid, Spain

Birth Date[:]  October 21, 1997

Home State: Texas

(emphasis
added).  No party timely filed a post-judgment motion, regular appeal,
restricted appeal, or bill of review regarding this final divorce decree. 

The Spanish Proceeding

In June 2002, the court in the Spanish divorce proceeding
rendered its final divorce judgment, ordering Skadden to pay child support and
awarding Tarquis custody of Benjamin.  The Spanish judgment, which does not
establish a visitation schedule in favor of Skadden, states that the court did
not deem it proper to establish a visitation schedule, in part because Benjamin
does not know Skadden or have any relationship with him.  

The Texas Enforcement Actions

On April 2, 2004, Skadden filed in the Texas proceeding a
petition for interference with possessory rights and a motion for enforcement
of the Texas Decree, which provides that both Skadden and Tarquis are joint
managing conservators of Benjamin.  On the same day, Skadden also filed an
application for writ of habeas corpus.  The habeas corpus action has a separate
cause number from the proceeding containing the petition for interference with
possessory rights and the motion for enforcement.  In this opinion, we refer to
both of these enforcement cases collectively as the AEnforcement
Actions.@  

On June 29, 2004, Tarquis filed an original answer that
contained only a general denial and a request for attorney=s fees.  A few
weeks later, on July 14, 2004, Tarquis filed a ASpecial
Appearance,@ seeking a dismissal because (1) Tarquis allegedly
does not have sufficient minimum contacts with Texas and the trial court=s exercise of
personal jurisdiction over her allegedly would offend traditional notions of
fair play and substantial justice, and (2) the motion for enforcement is
allegedly based on a void judgment.








On September 29, 2004, the trial court held a hearing and
determined that Tarquis waived her personal-jurisdiction objection in the
Enforcement Actions by not filing her special appearance before her answer.  On
October 27, 2004, the trial court  issued a capias for Tarquis based on her failure
to appear as ordered at a prior hearing.

On November 29, 2004, Tarquis filed a AMotion to Dismiss
for Lack of Subject-Matter Jurisdiction.@  In this motion,
Tarquis asserted that, both at the time of the motion and when the trial court
issued the Texas Decree, the trial court lacked subject-matter jurisdiction
over child custody issues under Chapter 152 of the Texas Family Code.  Tarquis
also asserted that the Texas Decree was void because she was not validly served
with process before the rendition of the Texas Decree.  On December 10, 2004,
Tarquis filed a AMotion to Dismiss for Lack of Personal
Jurisdiction.@  In this motion, Tarquis asserted that, both at the
time of the motion and when the trial court issued the Texas Decree, the trial
court lacked personal jurisdiction over Tarquis because Tarquis did not have
sufficient minimum contacts with Texas and because the trial court=s exercise of
personal jurisdiction over her would offend traditional notions of fair play
and substantial justice.  This motion did not mention any alleged lack of
service of process on Tarquis.  On the same day, Tarquis filed a AFirst Amended
Motion to Dismiss for Lack of Subject-Matter Jurisdiction.@  This amended
motion is substantially similar to the original motion Tarquis filed on
November 29, 2004, except that in it Tarquis emphasizes that her motion is
directed toward Skadden=s motion for enforcement, petition for
interference with possessory rights, and application for writ of habeas
corpus.  Tarquis=s two motions were set for hearing on
December 27, 2004.

On December 21, 2004 and December 22, 2004, the trial court
faxed a handwritten letter to counsel.  Although it is difficult to read, this
letter appears to state the following: 

As I indicated to you, I have now reviewed this file
from divorce through enforcement and habeas corpus.  I have reviewed my docket
sheet and note that my findings/rendition provided AJMCCno jurisd. over child to determine
primary JMC or geographical provision/ no jurisd. on periods of poss.@








The Decree is inconsistent with the rendition but
clearly there never was personal jurisdiction, only in rem to grant the
divorce.

Therefor [sic], the court now renders that it has no
personal jurisdiction, only in rem jurisdiction.  Motion to Enforce + Habeas
are Dismissed W.O.J.

On
December 27, 2004, the trial court held a hearing and read from its letter to
counsel.  The trial judge stated that he did not intend to use the docket entry
to override the Texas Decree but that he had used the docket sheet to refresh
his memory regarding whether service of process had been validly effected on
Tarquis.  Tarquis=s counsel asserted that Skadden=s divorce petition
shows that the trial court did not have subject-matter jurisdiction over
Benjamin under section 152.201 of the Texas Family Code. Skadden asserted that
the court already had ruled that Tarquis=s special
appearance was untimely, so that Tarquis should not be able to raise personal
jurisdiction.  The trial court stated that it was relying on the fact that
there was no valid service of process on Tarquis  and then took judicial notice
of everything in its file in the underlying divorce case, which reflected
various attempts by Skadden to effect service of process on Tarquis.  

The trial court stated that its ruling, as contained in the
faxed letter, had nothing to do with any hearing that was set on Tarquis=s motions to
dismiss for lack of subject-matter jurisdiction and lack of personal
jurisdiction.  The trial court reaffirmed its earlier ruling that Tarquis=s special
appearance was untimely and would be overruled. The trial court, indicating
there had been no valid service of process in the divorce proceeding, stated
that Skadden=s motion for enforcement and application for writ of
habeas corpus fail only because the court determined that it had no personal
jurisdiction at the time the Texas Decree was rendered.  The trial court stated
that the handwritten letter that it had faxed to counsel the previous week was
its ruling.  Therefore, the trial court took that letter, added the notation A12/27/04 (per
hearing)@ at the top, and
had the document filed with the papers of the court. 








On January 14, 2005, the trial court signed an order
dismissing with prejudice Skadden=s motion for
enforcement and petition for interference with possessory rights.  The order
states that on December 27, 2004, the court considered Tarquis=s AMotion to Dismiss
for Lack of Personal Jurisdiction and Motion to Dismiss for Lack of
Subject-Matter Jurisdiction.@  In the order the court finds that
Tarquis was not served with process in the underlying divorce action in
compliance with the Texas Rules of Civil Procedure and that the court does not
have personal jurisdiction in this case.  The order states that the court
grants Athe motion.@  On January 14,
2005, the trial court also signed an order dismissing with prejudice Skadden=s application for
a writ of habeas corpus.  This order differs from the other dismissal order of
the same date in only one respectCit dismisses a
different proceeding.  The habeas corpus order contains the same recitations
and findings as the other January 14, 2005 dismissal order.  At a prior
hearing, Tarquis=s trial court counsel stated that she had
no knowledge there were two different cause numbers, and Tarquis never filed
anything in the habeas action.  Nonetheless, the trial court signed an order in
the habeas action granting a motion Tarquis had filed in the other case.  The
trial court apparently treated all of Tarquis=s filings and
arguments as having been asserted in both cases, and, for the purposes of this
appeal, we presume likewise.

Despite Skadden=s timely filed
request for findings of fact and conclusions of law and notice of past due
findings of fact and conclusions of law, the trial court did not issue findings
of fact and conclusions of law.  

After Skadden filed these appeals from both dismissal
orders, this court abated the appeals so that the trial court could file
findings of fact and conclusions of law.  The trial court issued findings of
fact and conclusions of law, stating, among other things as follows:

[Findings of Fact]

5.        [Benjamin] has at all times relevant to
the action been in the sole custody and possession [of Tarquis] in Spain.  The
child was born in Madrid, Spain on October 21, 1997 and resided in Texas,
according to [Skadden=s] Affidavit, only 25 daysCSeptember 8, 1998 to October 3,
1998.

6.        No citation by personal service was ever
accomplished on the divorce action in the United States or in Spain.








7.       Citation by publication in the divorce
action was published in Daily Court Review September 23, 1999 [sic] and the
return of citation was filed on October 12, 1999.  This is the only citation
return in the Court=s file.  

8.       No statement of the Evidence was signed or
filed to support citation by publication in the divorce action.

9.       No request for the appointment of an
attorney ad litem in the divorce action for [Tarquis] was made incident to
citation by publication and no appointment of an attorney ad litem was made.

10.     The Court was not requested in the divorce
action to waive the requirement of appointment of an attorney ad litem since
there is a child involved in the divorce action.

11.     The Court did not waive (and could not
waive) the appointment of an attorney ad litem for [Tarquis] served [sic] by
publication in the divorce action with child involved.

12.     The Divorce Decree[] does not reflect that
citation was issued, served, and returned; it reflects only Aadequate notice of these
proceedings@ and ADue Process of law has been satisfied@: [sic] the Court file reflects
only citation by publication.

[Conclusions of Law]

1.       The trial court did not have personal
jurisdiction over [Tarquis] or the child in the divorce action since citation
was by publication only.

2.       The trial court, due to the non-appointment
of attorney ad litem to represent [Tarquis] and due to the failure to file
Statement of the Evidence, incident to the citation by publication, did not
have in rem jurisdiction, or personal jurisdiction.

3.       The court file reflects there is no
evidence that [Tarquis] was personally served with citation and no
evidence that citation by publication requirements were perfected.  No
presumption can be indulged that there was valid issuance, service, and return
of citation.

4.       The trial court, sua sponte, may determine
its lack of personal jurisdiction and/or subject-matter jurisdiction.  

5.       An attorney ad litem must be appointed for
a Respondent [sic] served by publication if there are children.  There must be
a statement of the evidence of service filed.  (Tex. Family Code, ' 102.010) 

. . .

1.       Since the trial court did not have personal
jurisdiction under the underlying order, the Decree of Divorce, it does not
have, and cannot acquire, personal jurisdiction to enforce the Decree of
Divorce against [Tarquis] by contempt or by habeas corpus.








2.       Any inconsistency between the docket sheet
entry at the time of the divorce hearing on December 13, 1999 (the trial judge
then being the associate judge of this court)  and the Divorce Decree signed
December 22, 1999 is explained by the sheer volume of cases and the inability
to edit word for word the Decree proposed by aggressive counsel.  However, the
docket sheet rendition in counsel=s presence at that time is totally consistent withC(a) No jurisdiction [sic] over
child to determine conservatorship[,] (b) no jurisdiction over periods of
possession, and (c) the notation Acitation by publication with no ad litem@.  The court file documents [sic]
confirm the docket sheet entries that citation was by publication regardless of
the Decree[=]s vagueness on the notice issue.

3.       Since the trial court has no personal
jurisdiction over [Tarquis] in the divorce action, it has no personal
jurisdiction over [Tarquis] in enforcement proceedings by contempt or habeas
corpus relating to the divorce provisions.  

4.       Since
there is no personal jurisdiction over [Tarquis] in the divorce action there is
no personal jurisdiction over [Tarquis] in the enforcement action.

In sum, the trial court dismissed the Enforcement Actions
because it concluded that, when it rendered the Texas Decree in December 1999,
it lacked personal jurisdiction due to the failure to validly serve Tarquis
with process.[3] 
Skadden appealed both of the dismissal orders rendered by the trial court in
the Enforcement Actions.

II.  Issues Presented

On appeal, Skadden asserts the following issues:

(1)     The trial court erred in basing its
dismissal for want of personal jurisdiction on the docket entry from the
December 1999 trial.








(2)     The trial court erred in dismissing the
Enforcement Actions because (a) the record of what transpired at the trial no
longer exists, (b) there is no evidence in the record showing that the trial
evidence was contrary to the trial court=s affirmative findings of jurisdiction, (c) regarding the
alleged failure to serve Tarquis with process, Tarquis may not attack the Texas
Decree on this basis because her first attack on this basis was more than four
years after the trial court rendered the Texas Decree.

(3)     The trial court erred in dismissing based on
lack of personal jurisdiction over Tarquis because Tarquis filed her motion
raising this issue after she filed her answer.

(4)     The trial court erred in dismissing for lack
of personal jurisdiction over Tarquis in the Texas Decree because Tarquis is
estopped from asserting lack of personal jurisdiction based on her acceptance
of child support payments ordered by the trial court in the Texas Decree.

(5)     The trial court erred in failing to hold an
unbiased hearing on the issue of jurisdiction because, in alleged violation of
Skadden=s due process rights, the trial
court granted Tarquis=s motion to dismiss before the date
on which these motions were set for hearing.  

(6)     The trial court erred by not issuing
findings of fact and conclusions of law.[4]

(7)     The trial
court erred in dismissing the Enforcement Actions with prejudice.

In addition, both Skadden and Tarquis have filed various
motions in this court and seek rulings on the following:

(1)     whether Tarquis should be sanctioned;

(2)     whether Skadden should prevail in this
appeal based on the doctrine of judicial estoppel;

(3)     whether judgment on appeal should be granted
in Skadden=s favor based on two appellate
issues not presented in Skadden=s appellate brief; and

(4)     whether these appeals should be dismissed
for lack of subject-matter jurisdiction because the trial court allegedly
lacked subject-matter jurisdiction to render the Texas Decree or alternatively,
whether this court should affirm the trial court=s orders.








III.
Analysis

A.      Is the Texas Decree subject to attack by means
other than a motion for new trial, direct appeal, restricted appeal, or bill of
review?

In his second issue, Skadden asserts that Tarquis may not
attack the validity of the Texas Decree in the Enforcement Actions based on an
alleged lack of personal jurisdiction due to an alleged failure to serve her
with process.  On appeal, Tarquis does not argue that she properly asserted a
collateral attack on the Texas Decree; rather, Tarquis asserts that the trial
court correctly sustained her direct attack on the Texas Decree.  Nonetheless,
we need not address whether Tarquis=s attack was a
direct attack regarding this issue because we are bound by the Texas Supreme
Court=s holding in McEwen
v. Harrison, 345 S.W.2d 706, 709B11 (Tex. 1961),
that after the time for instituting a regular appeal has elapsed, a party may
attack a final judgment based on a claim of invalid service in only two ways,
neither of which were invoked in this case.








Texas cases contain many obiter dicta indicating that
courts may allow a collateral attack if the judgment is void based on a lack of
personal jurisdiction resulting from a failure to validly serve a defendant
with process.  See, e.g., Browning v. Prostok, 165 S.W.3d 336, 346 (Tex.
2005) (stating in obiter dictum that judgment is void and subject to collateral
attack if the court rendering the judgment Ahad no
jurisdiction of the parties or property, no jurisdiction of the subject matter,
no jurisdiction to enter the particular judgment, or no capacity to act@); Mapco, Inc.
v. Forrest, 795 S.W.2d 700, 703 (Tex. 1990) (same); Cook v. Cameron,
733 S.W.2d 137, 140 (Tex. 1987) (same); Browning v. Placke, 698 S.W.2d
362, 363 (Tex. 1985) (same); Austin Indep. Sch. Dist. v. Sierra Club,
495 S.W.2d 878, 881 (Tex. 1973) (same).  However, in McEwen, the Texas
Supreme Court held that, after the time has passed to timely file a motion for
new trial or regular appeal, the exclusive means by which partes can challenge
a final judgment based on an allegation that it is void for lack of service of
process or lack of valid service of process are by filing a writ of error (now
restricted appeal) or by filing a bill of review.  345 S.W.2d at 709B11 (holding that,
once trial court has lost plenary power over a final judgment, the only means
by which parties may challenge the judgment as being void for lack of service
or lack of valid service is by writ of error (now restricted appeal) or by bill
of review).  The Texas Supreme Court stated that its holding applied whether
the challenge was characterized as a direct attack or as a collateral attack.  Id
at 710.  

The Texas Supreme
Court has not overruled or disapproved of its holding in McEwen, and
this court must follow it.  See Lubbock County, Tex. v. Trammel=s Lubbock Bail
Bonds, 80 S.W.3d 580, 585 (Tex. 2002) (stating it is not the function of a
court of appeals to abrogate or modify established precedent); Nguyen v.
Intertex, Inc., 93 S.W.3d 288, 294B96 & n.3 (Tex.
App.CHouston [14th
Dist.] 2002, no pet.) (noting dicta from Texas Supreme Court and following McEwen
holding in this regard).  We conclude that after the time expired for
filing a motion for new trial and direct appeal, a restricted appeal or a bill
of review were the only available procedural avenues for Tarquis to attack the
Texas Decree based on an allegation that the trial court lacked personal
jurisdiction over her when it rendered the Texas Decree due to a failure to
serve Tarquis with process or a failure to properly serve her with process.  See
McEwen, 345 S.W.2d at 709B11; Nguyen,
93 S.W.3d at 294B96. 








Tarquis did not
file a restricted appeal; however, she did file a bill of review in a separate
proceeding in the trial court.  Our record reflects that the trial court
dismissed this bill of review because Tarquis filed it more than four years
after the trial court rendered the Texas Decree.  In the Enforcement Actions
below, Skadden sought to enforce the Texas Decree, and the trial court granted
Tarquis=s motion to
dismiss these actions on the ground that the Texas Decree is void because
Tarquis was never validly served with process in the underlying divorce
action.  Tarquis=s motion in response to the Enforcement
Actions was not (1) a motion for a rehearing or regular appeal in the
underlying action, (2) a restricted appeal, or (3) a bill of review. 
Therefore, even if, due to a failure to serve Tarquis with process or a failure
to validly serve her with process, the trial court lacked personal jurisdiction
over Tarquis when it rendered the Texas Decree, binding precedent bars Tarquis
from attacking the Texas Decree in the Enforcement Actions, rather than by a
timely restricted appeal or bill of review.  See McEwen, 345
S.W.2d at 709B11; Nguyen, 93 S.W.3d at 294B96.  The trial
court erred in granting Tarquis=s motions to dismiss based on a lack of
personal jurisdiction due to an alleged failure to validly serve Tarquis with
process.  See id.; Nguyen, 93 S.W.3d at 294B96.

Tarquis argues
that the alleged voidness of the Texas Decree based on the alleged failure to
properly serve Tarquis with process is fundamental error that can be raised at
any time; however, the cases that Tarquis cites in support of this proposition
are not on point.  See Tullos v. Eaton Corp., 695 S.W.2d 568, 568B69 (Tex. 1985)
(stating that question of Ajurisdiction@ is fundamental
and can be raised at any time in case that involved a lack of appellate
jurisdiction rather than a failure to serve a party with process); Cox v.
Johnson, 638 S.W.2d 867, 868 (Tex. 1982) (holding that alleged failure to
join an additional party cannot constitute fundamental error and stating that
fundamental error survives only in rare instances in which the record shows on
its face that the court lacked Ajurisdiction@ or that the
public interest is directly and adversely affected as that interest is declared
in the statutes and constitution of this state); In re J.B.W., 99 S.W.3d
218, 221 (Tex. App.CFort Worth 2003, pet. denied) (holding
that a complaint that the trial court lacked subject-matter jurisdiction raises
fundamental error and can be made at any time on regular appeal, without
addressing complaints regarding alleged failure to serve with process). 
Tarquis has not cited, and this court has not found, any Texas Supreme Court
cases holding that the complaint involved in this case constitutes fundamental
error.[5] 
Therefore, we must follow the McEwen case.  

 








B.      Can this court affirm the trial court=s dismissal of the
Enforcement Actions based on the trial court=s alleged lack of
subject-matter jurisdiction over child custody issues?

The trial court
had subject-matter jurisdiction to make an initial child custody determination
regarding Benjamin only if:

(1) Texas was Benjamin=s home state on the date of the
commencement of the divorce proceeding, or was Benjamin=s home state within six months
before the commencement of the proceeding and Benjamin is absent from this
state but a parent or person acting as a parent continues to live in this
state;

(2) a court of another state did
not have jurisdiction under Subdivision (1), or a court of Benjamin=s home state had declined to
exercise jurisdiction on the ground that Texas is the more appropriate forum
under section 152.207 or 152.208 of the Texas Family Code, and:

(A) Benjamin and his parents, or
Benjamin and at least one parent or a person acting as a parent, had a
significant connection with Texas other than mere physical presence; and

(B) substantial evidence was
available in Texas concerning Benjamin=s care, protection, training, and personal relationships;

(3) all courts having jurisdiction
under (1) or (2) above had declined to exercise jurisdiction on the ground that
a Texas court was the more appropriate forum to determine the custody of the
child under section 152.207 or 152.208 of the Texas Family Code;  or

(4) no court of any other state
would had jurisdiction under the criteria specified in Subdivision (1), (2), or
(3).

 

See Tex. Fam. Code Ann. '' 152.201(a), 152.204 (Vernon 2002).  As
used in this determination, Ahome state@ means the state
in which Benjamin lived with a parent or a person acting as a parent for at
least six consecutive months immediately before the commencement of the
underlying divorce proceeding.  See id. ' 152.102(7) (Vernon
2002). 








Tarquis moved to
dismiss the Enforcement Actions based on her assertion that Skadden sought to
enforce only the child custody portions of the Texas Decree and that, under
section 152.201 of the Texas Family Code, the trial court lacked subject-matter
jurisdiction to make the child custody determinations contained in the Texas
Decree.  Tarquis asserts, and we agree, that the trial court did not dismiss
based on this argument; however, she asserts that this court may nonetheless
affirm the trial court=s dismissal of the Enforcement Actions on
this basis.  We presume, without deciding, that we can affirm the trial court=s dismissal orders
on this basis, and we address Tarquis=s subject-matter
jurisdiction argument.

To analyze this
issue, we must determine whether Tarquis=s attack on the
Texas Decree was a direct attack or a collateral attack.  Tarquis claims she
asserted a direct attack against the Texas Decree in the trial court. 
Appellate courts have set forth different definitions of Adirect attack@ and Acollateral attack.@[6]  Compare Crawford
v. McDonald, 33 S.W. 325, 327 (Tex. 1895) with Texas Dep=t of Transp. v. T.
Brown Constructors, Inc., 947 S.W.2d 655, 659 (Tex. App.CAustin 1997, pet.
denied).  Nonetheless, we are bound by the Texas Supreme Court=s holding in Reiss
v. Reiss to conclude that Tarquis asserted a collateral attack on the Texas
Decree.[7]  
See 118 S.W.3d 439, 440B43 (Tex. 2003) (holding that, in action to
enforce divorce decree rendered 18 years earlier, ex-spouse=s attempt to avoid
the effect of the final decree by arguing decree was void constituted collateral
attack on the decree). 

To sustain Tarquis=s collateral
attack based on her subject-matter jurisdiction argument, the trial court would
have had to conclude that the record before the trial court from the underlying
divorce proceeding affirmatively negates the existence of facts essential to
the trial court=s subject-matter jurisdiction; if the
record is silent or supports subject-matter jurisdiction, then the trial court
would not have been able to sustain the collateral attack.  See White v.
White, 179 S.W.2d 503, 506 (Tex. 1944); Etzel v. U.S. Dep=t of Air Force, 620 S.W.2d 853,
856 (Tex. Civ. App.CHouston [14th Dist.] 1981, writ ref=d n.r.e.).  








In the Texas
Decree, the trial court based its child-custody jurisdiction on section
152.201(a)(1) of the Texas Family Code.  See  Tex. Fam. Code Ann. ' 152.201.  After
receiving evidence at trial, the trial court found that (1) it had jurisdiction
over the case, (2) all prerequisites to the exercise of its jurisdiction had
been satisfied, and (3) Benjamin=s home state was
Texas.  These findings support the existence of subject-matter jurisdiction to
make an initial child custody determination regarding Benjamin.  See id.
Tarquis points out that Skadden, in an affidavit contained in the petition on
which the Texas Decree was based, testifies that Benjamin was born in Spain and
had been in Texas for only 25 days before the date on which Skadden filed the
divorce proceeding.  However, this affidavit and petition would not have precluded
the associate judge from hearing evidence during the underlying trial that
would support a finding that Benjamin lived in Texas with a parent or a person
acting as a parent for at least six consecutive months immediately before the
commencement of the underlying divorce proceeding.  Skadden could have
testified at trial in a manner that contradicted his affidavit, or another
witness could have testified in support of such a finding. 

          Based on
the evidence presented at trial, the trial court found that Benjamin=s home state was
Texas and that the court had jurisdiction.  We do not know what evidence the
associate judge heard during the bench trial of the underlying divorce
proceeding because the court reporter, after the applicable statutory period
for preservation expired, destroyed her notes without having transcribed them. 
Therefore, our record does not contain a reporter=s record
reflecting the evidence at trial.  In the absence of a reporter=s record from the
bench trial, we presume that the evidence and other proceedings at trial
supported the Texas Decree.  See Bandy v. First State Bank, 835 S.W.2d
609, 614B15 (Tex. 1992)
(rejecting collateral attack because it was based on record before the trial
court at the time of the action being collaterally attacked and because the
challenging party did not present a record of the proceedings in question); see
also Middleton v. Nat=l Fam. Care Life
Ins. Co., No. 14-04-00428-CV, 2006 WL 89503, at *2 (Tex. App.CHouston [14th Dist.]
Jan. 17, 2006, pet. denied) (mem. op.) (stating that there was no reporter=s record of the
trial and holding that, because appellant did not comply with Rule 34.6(c) and
the appellate record did not contain a complete record of the trial, this court
would presume the omitted portions are relevant to the disposition of the
appeal and support the trial court=s judgment). 








Even though
Tarquis alleges fundamental error, this court still needs a record of the trial
proceedings; otherwise, we presume they support the trial court=s Texas Decree.  See
Mason v. Our Lady Star of the Sea Catholic Church, 154 S.W.3d 816, 821
(Tex. App.CHouston [14th Dist.] 2005, no pet.).  We do not use
the doctrine of fundamental error to alter the presumption that missing parts
of the trial record support the trial court=s judgment.  See
id.  Therefore, we can only conclude that the record before the trial court
from the underlying divorce proceeding did not affirmatively negate the
existence of facts essential to the trial court=s subject-matter
jurisdiction over child custody issues.  It would have been error for the trial
court to dismiss the Enforcement Actions based on Tarquis=s collateral
attack asserting a lack of subject-matter jurisdiction.  

While the trial
court did not rely on this basis for dismissal in its findings of fact and
conclusions of law, the trial court did state the following:

$                  
Skadden=s affidavit states Benjamin was
only in Texas for 25 days before Skadden filed the Texas divorce proceeding; 

 

$                  
Any
inconsistency between the docket sheet entry at the time of the divorce hearing
on December 13, 1999 (indicating no jurisdiction over child custody issues) and
the Decree is explained by Athe sheer volume of cases and the inability to edit word for word the
Decree proposed by aggressive counsel@;

 

$                  
The Adocket sheet rendition in counsel=s presence@ during trial Ais totally consistent with@ a lack of jurisdiction over child
custody issues.  

 








Nonetheless, as
discussed above, Skadden=s affidavit does not overcome the
presumption that the evidence at trial supported the trial court=s finding that
Texas was Benjamin=s home state, as stated in the Texas
Decree.  Furthermore, even if we presume that the associate judge in the trial
of the underlying divorce proceeding (1) made docket-sheet notations indicating
no jurisdiction over child custody issues and (2) announced at some point
during trial that it had no jurisdiction over child custody issues, these
actions would not preclude the associate judge from hearing evidence at trial
that would support the finding in the Texas Decree that Texas was Benjamin=s home state.  In
dismissing the Enforcement Actions, the trial court did not find that, contrary
to the Texas Decree, there was no evidence at trial in the divorce action to
support a finding that the trial court had jurisdiction over child custody
issues.  The trial court did not dismiss the Enforcement Actions based on
Tarquis=s subject-matter
jurisdiction argument, and it would have erred in doing so.  See Bandy,
835 S.W.2d at 614B15; White, 179 S.W.2d at 506
(rejecting collateral attack because the record from the underlying proceeding 
did not affirmatively show that the court in question lacked subject-matter
jurisdiction); Etzel, 620 S.W.2d at 856 (rejecting collateral attack of
enforcement-action judgment, in part, because record from underlying proceeding
showed court rendering judgment had subject-matter jurisdiction).  

Tarquis also
argues that the trial court lacked subject-matter jurisdiction to render the
Texas Decree based on the pendency of the Spanish divorce proceeding that was
filed before the Texas divorce proceeding.  While the existence of a
first-filed proceeding regarding the same subject matter in another
jurisdiction may raise various issues, including comity, this first-filed
proceeding does not deprive the court in the second-filed case of
subject-matter jurisdiction.  See Ex parte Jabara, 556 S.W.2d 592, 596
(Tex. Civ. App.CDallas 1977, orig. proceeding) (holding
that pendency of previously filed divorce proceeding in foreign jurisdiction
does not preclude Texas courts from exercising jurisdiction over the same
controversy).  

In sum, we cannot affirm the dismissal of the Enforcement
Actions based on Tarquis=s argument that the Texas Decree was void
for lack of subject-matter jurisdiction as to child custody issues.[8] 
Accordingly, we sustain Skadden=s second issue.[9]








C.      Rulings on Pending Motions

Skadden has filed a motion and supplemental motion in this
court seeking sanctions against Tarquis.  We conclude sanctions are not
appropriate under the circumstances, and we deny Skadden=s motions for
sanctions.  We strike Exhibits 1 and 4 attached to Tarquis=s appellate brief
as well as her ANotice to Court@ and the
attachments thereto (filed on May 9, 2006) as being outside the record.  See
Nguyen, 93 S.W.3d at 292B93 (striking documents filed on appeal
that were not contained in appellate record because, with limited exceptions
that do not apply, appellate courts may not consider documents outside of the
appellate record).  We deny Skadden=s AMotion for
Judgment Because of Judicial Estoppel@ and strike the
attachments to that motion, as well as the attachments to Tarquis=s response in
opposition thereto, because these attachments are outside the appellate
record.  See id.  We strike Skadden=s AMotion for
Judgment@ because in it
Skadden seeks to assert additional appellate issues without leave of court. 
Finally, we deny Tarquis=s AMotion to Dismiss
Appeals; Alternatively, Motion to Render Opinions/Judgment in Favor of
Appellee.@  

                                                 IV. Conclusion

After the time
expired for filing a motion for new trial and direct appeal, a restricted
appeal or a bill of review were the only available procedural avenues for
Tarquis to attack the Texas Decree based on an allegation that the trial court
lacked personal jurisdiction over her when it rendered the Texas Decree due to
a failure to serve her with process or a failure to properly serve her with
process.  Tarquis did not file a restricted appeal, and the trial court
dismissed her bill of review because she filed it more than four years after
the trial court rendered the Texas Decree.  Tarquis=s motion in
response to the Enforcement Actions was not (1) a motion for a rehearing or
regular appeal in the underlying action, (2) a restricted appeal, or (3) a bill
of review.  Therefore, even if, due to a failure to effect valid service of
process, the trial court lacked personal jurisdiction over Tarquis when it
rendered the Texas Decree, binding precedent bars Tarquis from attacking the
Texas Decree in the Enforcement Actions.  The trial court erred in granting
Tarquis=s motions to
dismiss based on an alleged lack of personal jurisdiction due to an alleged
failure to validly serve Tarquis with process. 








The record before
the trial court from the underlying divorce proceeding did not affirmatively
negate the existence of facts essential to the trial court=s subject-matter
jurisdiction over child custody issues.  Therefore, it would have been error
for the trial court to dismiss the Enforcement Actions based on Tarquis=s collateral
attack asserting a lack of subject-matter jurisdiction as to child custody
issues.

For the reasons
stated above, we sustain Skadden=s second issue,
reverse the trial court=s dismissal orders in each of the cases
below, and remand the cases for further proceedings consistent with this
opinion.  

 

 

 

/s/      Kem Thompson Frost

Justice

 

 

Judgment rendered
and Opinion filed October 31, 2006.

Panel consists of
Justices Hudson, Frost, and Seymore.

 

 









[1]  Certain documents from the Spanish proceeding are
not contained in this court=s record. 
Accordingly, this court is striking all copies of such documents attached to
appellate briefs and other filings that are outside of our record.  We rely on
Skadden=s trial-brief admission concerning the commencement of
these proceedings.  Skadden asserts he was never served with process in the
Spanish divorce proceeding, while Tarquis claims Skadden willingly and without
complaint submitted himself to the authority of the Spanish courts in the
Spanish divorce proceeding.  We need not address this issue to resolve these
appeals.





[2]   The associate judge who presided over the December 1999 trial later became the presiding judge of the trial court
and rendered the dismissal orders that are the subject of this appeal.





[3]  The trial court did not base its dismissals on the
following grounds: (1)
the trial court=s exercise of personal jurisdiction
over Tarquis in the underlying divorce proceeding violated constitutional due
process because Tarquis allegedly lacked sufficient minimum contacts with Texas
and the trial court=s exercise of personal jurisdiction
over Tarquis allegedly would offend traditional notions of fair play and
substantial justice; (2) under section 152.201 of the Texas Family Code, the
trial court lacked subject-matter jurisdiction to make a child custody determination
as to Benjamin Skadden-Tarquis because the affidavit contained in the divorce
petition showed that since his birth (more than a year before the petition was
filed) the child had lived in Texas for only 25 days; (3) the trial court=s exercise of personal jurisdiction
in the enforcement proceeding would violate due process because Tarquis
allegedly lacked  sufficient minimum contacts with Texas and the trial court=s exercise of personal jurisdiction
over Tarquis allegedly would offend traditional notions of fair play and
substantial justice.  





[4]  This issue is now moot because the trial court
issued findings of fact and conclusions of law following this court=s abatement order.





[5]  We presume the constitutionality of all statutes and procedural law
applicable in this case.  See Edgewood Indep. Sch. Dist. v. Meno,
917 S.W.2d 717, 725 (Tex. 1995). Tarquis
has not challenged the constitutionality of the Texas procedural law that
requires her complaint to be raised within four years of the rendition of the
Texas Decree, and she has not alleged that she received no actual or
constructive notice of the suit or Texas Decree until more than four years
after the rendition of the Texas Decree.  See Peralta v. Heights Med. Ctr.,
Inc., 485 U.S. 80, 84B86, 108 S.Ct. 896, 899B900, 99 L.Ed.2d 75 (1988) (holding that rendition of judgment against
defendant without service of process violates the Due Process Clause of the
United States Constitution if the defendant did not have actual or constructive
notice of the suit or judgment in time to provide defendant with an opportunity
to be heard, regardless of whether defendant had a meritorious defense).  The
trial court based its dismissal on an alleged failure to validly serve Tarquis
with process; however, the trial court stated AI know that [Tarquis] had actual notice. I have no doubt that she had
actual notice.@





[6]  Tarquis cites two cases that contain definitions of 
Adirect attack@
and Acollateral attack@
but whose holdings do not apply to the facts of this case.  See Hogan v.
City of Tyler,  602 S.W.2d 555, 558B59
(Tex. Civ. App.CTyler 1980, writ ref=d n.r.e.); Motor Mortgage Co. v. Finger, 200 S.W.2d 228, 230B31 (Tex. Civ. App.CWaco
1947, no writ).  The definitions stated in these two cases derive from the
definitions set forth by the Texas Supreme Court in Crawford v. McDonald, 33
S.W. 325, 327 (Tex. 1895).  





[7]  Even if we had to address the definitions of Adirect attack@
and Acollateral attack@
asserted by Tarquis, we still would conclude that her attack was collateral.   See
Crawford, 33 S.W. at 327.  Tarquis=s motion in response to the
Enforcement Actions was not (1) a motion for a rehearing or regular appeal in
the underlying action, (2) a restricted appeal, or (3) a bill of review.  By
her motion to dismiss, Tarquis sought to avoid the effect and binding force of
the Texas Decree in a proceeding that was instituted to enforce the Texas
Decree, not to amend, correct, reform, vacate, or enjoin the execution of the
Texas Decree.  See id.





[8]  As previously noted, we presume the constitutionality of all statutes
and procedural law applicable in this case.  See Meno, 917 S.W.2d
at 725. Tarquis has not challenged the
constitutionality of the Texas procedural law that presumes the missing reporter=s record supports the Texas Decree and that allows
court reporters to destroy their notes after three years.  Tarquis has not
asserted a constitutional violation based on an allegation that she received no
actual or constructive notice of the suit or Texas Decree until after the court
reporter had destroyed her notes of the trial proceedings.  See  Peralta,
485 U.S. at 84B86, 108 S.Ct. at 899B900.  The trial judge noted his belief that Tarquis had actual notice
of the Texas proceeding.





[9]  We need not and do not address Skadden=s first, third, fourth, fifth, and seventh issues.