Michael SKADDEN, Appellant,

v.

Ana Maria Tarquis ALFONSO, Appellee.

Nos. 14–05–00488–CV, 14–05–00489–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 31, 2006.

Supplemental Opinion on Overruling
of Rehearing March 6, 2007.

Michael Skadden, Houston, pro se.

James G. Rytting, Eugene P. Tausk, Marlene Dancer Adams, Pamela E. George, Houston, for appellee.

Panel consists of Justices HUDSON, FROST, and SEYMORE.

## OPINION

KEM THOMPSON FROST, Justice.

More than four years after the trial court's divorce decree became final, appellant instituted proceedings in the trial court to enforce the decree against his ex-wife. The trial court granted the ex-wife's motion to dismiss the enforcement actions based on the court's conclusion that she was never validly served with process in the underlying divorce action. The trial court erred in dismissing the enforcement actions because, after the time expired for filing a motion for new trial and direct appeal, a restricted appeal or a bill of review were the only available procedural avenues for the ex-wife to attack the decree based on an alleged failure to effect valid service of process on her. We cannot affirm the trial court's dismissal orders based on its alleged lack of subject-matter jurisdiction over child custody issues because the record before the trial court from the underlying divorce action did not

negate the existence of facts essential to the trial court's subject-matter jurisdiction over child custody issues. Therefore, we reverse the trial court's orders dismissing the enforcement actions, and we remand for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On or about March 15, 1999, appellee Ana Maria Tarquis Alfonso ("Tarquis") instituted the Spanish equivalent of divorce proceedings in a court in Madrid, Spain.[1] About a month later, on April 14, 1999, Skadden filed a petition for divorce in the trial court below. This petition contains an affidavit from Skadden stating that the only child of the marriage, Benjamin, has lived in Spain from birth until April 14, 1999, except for 25 days he spent in Houston, Texas, in September 1998. The record indicates that Skadden, after filing the Texas divorce action, tried to serve Tarquis (1) under the Hague Convention, (2) through personal service by a person authorized by the trial court under Texas Rule of Civil Procedure 103, (3) through service by registered mail sent to Tarquis's address in Spain, and (4) through service by publication in the *Daily Court Review.* Skadden alleges that he sent a copy of the petition and citation by regular air mail to Tarquis at her residence address in Madrid in November 1999.

### The Texas Proceeding

On December 13, 1999, the Texas divorce case was called to trial.[2] Skadden appeared along with counsel. Tarquis did not appear in person or through counsel. The record reflects that evidence was presented at trial; however, we do not know what evidence was presented. Although a record was made of the trial, no party asked the court reporter to transcribe her notes. Eventually, the court reporter discarded her notes of the trial without ever having transcribed them. *See* TEX. GOV'T CODE ANN. § 52.046(a)(4) (Vernon 2005) (requiring court reporters to preserve their notes for only three years from the date on which they were taken). Thus, there is no trial record for this court to review.

After trial, Skadden presented to the associate judge a proposed final divorce decree, which both Skadden and his counsel approved as to form and substance. The associate judge reviewed the proposed decree, made various revisions to it, and then approved it as the decree he recommended the trial judge to sign. On December 22, 1999, the presiding judge of the trial court signed the decree recommended by the associate judge without making any changes to it (hereinafter the "Texas Decree"). The Texas Decree adjudicated property and child custody issues, and it states, among other things, as follows:

> Based upon the evidence presented, the Court finds that [Tarquis] had adequate notice of these proceedings[.] Due process of law has been satisfied[.] [Tarquis] is wholly in default[.]

---

1. Certain documents from the Spanish proceeding are not contained in this court's record. Accordingly, this court is striking all copies of such documents attached to appellate briefs and other filings that are outside of our record. We rely on Skadden's trial-brief admission concerning the commencement of these proceedings. Skadden asserts he was never served with process in the Spanish divorce proceeding, while Tarquis claims Skadden willingly and without complaint submit-

ted himself to the authority of the Spanish courts in the Spanish divorce proceeding. We need not address this issue to resolve these appeals.

2. The associate judge who presided over the December 1999 trial later became the presiding judge of the trial court and rendered the dismissal orders that are the subject of this appeal.

The Court, *after receiving evidence,* finds that it has jurisdiction of this case. All prerequisites to the exercise of its jurisdiction have been duly complied with . . .

. . .

The Court finds that [Skadden] and [Tarquis] are the parents of only one child:

Name[:] Benjamin Skadden–Tarquis

Sex[:] Male

Birthplace[:] Madrid, Spain

Birth Date[:] October 21, 1997

*Home State: Texas*

(emphasis added). No party timely filed a post-judgment motion, regular appeal, restricted appeal, or bill of review regarding this final divorce decree.

### The Spanish Proceeding

In June 2002, the court in the Spanish divorce proceeding rendered its final divorce judgment, ordering Skadden to pay child support and awarding Tarquis custody of Benjamin. The Spanish judgment, which does not establish a visitation schedule in favor of Skadden, states that the court did not deem it proper to establish a visitation schedule, in part because Benjamin does not know Skadden or have any relationship with him.

### The Texas Enforcement Actions

On April 2, 2004, Skadden filed in the Texas proceeding a petition for interference with possessory rights and a motion for enforcement of the Texas Decree, which provides that both Skadden and Tarquis are joint managing conservators of Benjamin. On the same day, Skadden also filed an application for writ of habeas corpus. The habeas corpus action has a separate cause number from the proceeding containing the petition for interference with possessory rights and the motion for

enforcement. In this opinion, we refer to both of these enforcement cases collectively as the "Enforcement Actions."

On June 29, 2004, Tarquis filed an original answer that contained only a general denial and a request for attorney's fees. A few weeks later, on July 14, 2004, Tarquis filed a "Special Appearance," seeking a dismissal because (1) Tarquis allegedly does not have sufficient minimum contacts with Texas and the trial court's exercise of personal jurisdiction over her allegedly would offend traditional notions of fair play and substantial justice, and (2) the motion for enforcement is allegedly based on a void judgment.

On September 29, 2004, the trial court held a hearing and determined that Tarquis waived her personal-jurisdiction objection in the Enforcement Actions by not filing her special appearance before her answer. On October 27, 2004, the trial court issued a capias for Tarquis based on her failure to appear as ordered at a prior hearing.

On November 29, 2004, Tarquis filed a "Motion to Dismiss for Lack of Subject–Matter Jurisdiction." In this motion, Tarquis asserted that, both at the time of the motion and when the trial court issued the Texas Decree, the trial court lacked subject-matter jurisdiction over child custody issues under Chapter 152 of the Texas Family Code. Tarquis also asserted that the Texas Decree was void because she was not validly served with process before the rendition of the Texas Decree. On December 10, 2004, Tarquis filed a "Motion to Dismiss for Lack of Personal Jurisdiction." In this motion, Tarquis asserted that, both at the time of the motion and when the trial court issued the Texas Decree, the trial court lacked personal jurisdiction over Tarquis because Tarquis did not have sufficient minimum contacts with Texas and because the trial court's exer-

cise of personal jurisdiction over her would offend traditional notions of fair play and substantial justice. This motion did not mention any alleged lack of service of process on Tarquis. On the same day, Tarquis filed a "First Amended Motion to Dismiss for Lack of Subject–Matter Jurisdiction." This amended motion is substantially similar to the original motion Tarquis filed on November 29, 2004, except that in it Tarquis emphasizes that her motion is directed toward Skadden's motion for enforcement, petition for interference with possessory rights, and application for writ of habeas corpus. Tarquis's two motions were set for hearing on December 27, 2004.

On December 21, 2004 and December 22, 2004, the trial court faxed a handwritten letter to counsel. Although it is difficult to read, this letter appears to state the following:

> As I indicated to you, I have now reviewed this file from divorce through enforcement and habeas corpus. I have reviewed my docket sheet and note that my findings/rendition provided "*JMC— no jurisd. over child to determine primary JMC or geographical provision/ no jurisd. on periods of poss.*"
>
> The Decree is inconsistent with the rendition but clearly there never was personal jurisdiction, only in rem to grant the divorce.
>
> Therefor [sic], the court now renders that it has no personal jurisdiction, only in rem jurisdiction. Motion to Enforce + Habeas are Dismissed W.O.J.

On December 27, 2004, the trial court held a hearing and read from its letter to counsel. The trial judge stated that he did not intend to use the docket entry to override the Texas Decree but that he had used the docket sheet to refresh his memory regarding whether service of process had been validly effected on Tarquis. Tar-

quis's counsel asserted that Skadden's divorce petition shows that the trial court did not have subject-matter jurisdiction over Benjamin under section 152.201 of the Texas Family Code. Skadden asserted that the court already had ruled that Tarquis's special appearance was untimely, so that Tarquis should not be able to raise personal jurisdiction. The trial court stated that it was relying on the fact that there was no valid service of process on Tarquis and then took judicial notice of everything in its file in the underlying divorce case, which reflected various attempts by Skadden to effect service of process on Tarquis.

The trial court stated that its ruling, as contained in the faxed letter, had nothing to do with any hearing that was set on Tarquis's motions to dismiss for lack of subject-matter jurisdiction and lack of personal jurisdiction. The trial court reaffirmed its earlier ruling that Tarquis's special appearance was untimely and would be overruled. The trial court, indicating there had been no valid service of process in the divorce proceeding, stated that Skadden's motion for enforcement and application for writ of habeas corpus fail only because the court determined that it had no personal jurisdiction at the time the Texas Decree was rendered. The trial court stated that the handwritten letter that it had faxed to counsel the previous week was its ruling. Therefore, the trial court took that letter, added the notation "12/27/04 (per hearing)" at the top, and had the document filed with the papers of the court.

On January 14, 2005, the trial court signed an order dismissing with prejudice Skadden's motion for enforcement and petition for interference with possessory rights. The order states that on December 27, 2004, the court considered Tarquis's "Motion to Dismiss for Lack of Personal Jurisdiction and Motion to Dismiss

for Lack of Subject–Matter Jurisdiction." In the order the court finds that Tarquis was not served with process in the underlying divorce action in compliance with the Texas Rules of Civil Procedure and that the court does not have personal jurisdiction in this case. The order states that the court grants "the motion." On January 14, 2005, the trial court also signed an order dismissing with prejudice Skadden's application for a writ of habeas corpus. This order differs from the other dismissal order of the same date in only one respect—it dismisses a different proceeding. The habeas corpus order contains the same recitations and findings as the other January 14, 2005 dismissal order. At a prior hearing, Tarquis's trial court counsel stated that she had no knowledge there were two different cause numbers, and Tarquis never filed anything in the habeas action. Nonetheless, the trial court signed an order in the habeas action granting a motion Tarquis had filed in the other case. The trial court apparently treated all of Tarquis's filings and arguments as having been asserted in both cases, and, for the purposes of this appeal, we presume likewise.

Despite Skadden's timely filed request for findings of fact and conclusions of law and notice of past due findings of fact and conclusions of law, the trial court did not issue findings of fact and conclusions of law.

After Skadden filed these appeals from both dismissal orders, this court abated the appeals so that the trial court could file findings of fact and conclusions of law. The trial court issued findings of fact and conclusions of law, stating, among other things as follows:

[Findings of Fact]

5. [Benjamin] has at all times relevant to the action been in the sole custody and possession [of Tarquis] in Spain. The child was born in Madrid, Spain on October 21, 1997 and resided in Texas, according to [Skadden's] Affidavit, only 25 days—September 8, 1998 to October 3, 1998.

6. No citation by personal service was ever accomplished on the divorce action in the United States or in Spain.

7. Citation by publication in the divorce action was published in Daily Court Review September 23, 1999[sic] and the return of citation was filed on October 12, 1999. This is the only citation return in the Court's file.

8. No statement of the Evidence was signed or filed to support citation by publication in the divorce action.

9. No request for the appointment of an attorney ad litem in the divorce action for [Tarquis] was made incident to citation by publication and no appointment of an attorney ad litem was made.

10. The Court was not requested in the divorce action to waive the requirement of appointment of an attorney ad litem since there is a child involved in the divorce action.

11. The Court did not waive (and could not waive) the appointment of an attorney ad litem for [Tarquis] served [sic] by publication in the divorce action with child involved.

12. The Divorce Decree[ ] does not reflect that citation was issued, served, and returned; it reflects only "adequate notice of these proceedings" and "Due Process of law has been satisfied": [sic] the Court file reflects only citation by publication.

[Conclusions of Law]

1. The trial court did not have personal jurisdiction over [Tarquis] or the child in the divorce action since citation was by publication only.

2. The trial court, due to the non-appointment of attorney ad litem to represent [Tarquis] and due to the failure to file Statement of the Evidence, incident to the citation by publication, did not have in rem jurisdiction, or personal jurisdiction.

3. The court file reflects there is *no evidence* that [Tarquis] was personally served with citation and *no evidence* that citation by publication requirements were perfected. No presumption can be indulged that there was valid issuance, service, and return of citation.

4. The trial court, sua sponte, may determine its lack of personal jurisdiction and/or subject-matter jurisdiction.

5. An attorney ad litem must be appointed for a Respondent [sic] served by publication if there are children. There must be a statement of the evidence of service filed. (Tex. Family Code, § 102.010)

. . .

1. Since the trial court did not have personal jurisdiction under the underlying order, the Decree of Divorce, it does not have, and cannot acquire, personal jurisdiction to enforce the Decree of Divorce against [Tarquis] by contempt or by habeas corpus.

2. Any inconsistency between the docket sheet entry at the time of the divorce hearing on December 13, 1999 (the trial judge then being the associate judge of this court) and the Divorce Decree signed December 22, 1999 is explained by the sheer volume of cases and the inability to edit word for word the Decree proposed by aggressive counsel. However, the docket sheet rendition in counsel's presence at that time is totally consistent with—(a) No jurisdiction [sic] over child to determine conservatorship[,] (b) no jurisdiction over periods of possession, and (c) the notation "citation by publication with no ad litem". The court file documents [sic] confirm the docket sheet entries that citation was by publication regardless of the Decree[']s vagueness on the notice issue.

3. Since the trial court has no personal jurisdiction over [Tarquis] in the divorce action, it has no personal jurisdiction over [Tarquis] in enforcement proceedings by contempt or habeas corpus relating to the divorce provisions.

4. Since there is no personal jurisdiction over [Tarquis] in the divorce action there is no personal jurisdiction over [Tarquis] in the enforcement action.

In sum, the trial court dismissed the Enforcement Actions because it concluded that, when it rendered the Texas Decree in December 1999, it lacked personal jurisdiction due to the failure to validly serve Tarquis with process.[3] Skadden appealed both of the dismissal orders rendered by the trial court in the Enforcement Actions.

---

**3.** The trial court did not base its dismissals on the following grounds: (1) the trial court's exercise of personal jurisdiction over Tarquis in the underlying divorce proceeding violated constitutional due process because Tarquis allegedly lacked sufficient minimum contacts with Texas and the trial court's exercise of personal jurisdiction over Tarquis allegedly would offend traditional notions of fair play and substantial justice; (2) under section 152.201 of the Texas Family Code, the trial court lacked subject-matter jurisdiction to make a child custody determination as to Benjamin Skadden–Tarquis because the affidavit contained in the divorce petition showed that since his birth (more than a year before the petition was filed) the child had lived in Texas for only 25 days; (3) the trial court's exercise of personal jurisdiction in the enforcement proceeding would violate due process because Tarquis allegedly lacked sufficient minimum contacts with Texas and the trial court's exercise of personal jurisdiction over Tarquis allegedly would offend traditional notions of fair play and substantial justice.

## II. Issues Presented

On appeal, Skadden asserts the following issues:

(1) The trial court erred in basing its dismissal for want of personal jurisdiction on the docket entry from the December 1999 trial.

(2) The trial court erred in dismissing the Enforcement Actions because (a) the record of what transpired at the trial no longer exists, (b) there is no evidence in the record showing that the trial evidence was contrary to the trial court's affirmative findings of jurisdiction, (c) regarding the alleged failure to serve Tarquis with process, Tarquis may not attack the Texas Decree on this basis because her first attack on this basis was more than four years after the trial court rendered the Texas Decree.

(3) The trial court erred in dismissing based on lack of personal jurisdiction over Tarquis because Tarquis filed her motion raising this issue after she filed her answer.

(4) The trial court erred in dismissing for lack of personal jurisdiction over Tarquis in the Texas Decree because Tarquis is estopped from asserting lack of personal jurisdiction based on her acceptance of child support payments ordered by the trial court in the Texas Decree.

(5) The trial court erred in failing to hold an unbiased hearing on the issue of jurisdiction because, in alleged violation of Skadden's due process rights, the trial court granted Tarquis's motion to dismiss before the date on which these motions were set for hearing.

(6) The trial court erred by not issuing findings of fact and conclusions of law.[4]

(7) The trial court erred in dismissing the Enforcement Actions with prejudice.

In addition, both Skadden and Tarquis have filed various motions in this court and seek rulings on the following:

(1) whether Tarquis should be sanctioned;

(2) whether Skadden should prevail in this appeal based on the doctrine of judicial estoppel;

(3) whether judgment on appeal should be granted in Skadden's favor based on two appellate issues not presented in Skadden's appellate brief; and

(4) whether these appeals should be dismissed for lack of subject-matter jurisdiction because the trial court allegedly lacked subject-matter jurisdiction to render the Texas Decree or alternatively, whether this court should affirm the trial court's orders.

## III. Analysis

### A. Is the Texas Decree subject to attack by means other than a motion for new trial, direct appeal, restricted appeal, or bill of review?

■ In his second issue, Skadden asserts that Tarquis may not attack the validity of the Texas Decree in the Enforcement Actions based on an alleged lack of personal jurisdiction due to an alleged failure to serve her with process. On appeal, Tarquis does not argue that she properly asserted a collateral attack on the Texas Decree; rather, Tarquis asserts that the

---

**4.** This issue is now moot because the trial court issued findings of fact and conclusions of law following this court's abatement order.

trial court correctly sustained her direct attack on the Texas Decree. Nonetheless, we need not address whether Tarquis's attack was a direct attack regarding this issue because we are bound by the Texas Supreme Court's holding in *McEwen v. Harrison,* 162 Tex. 125, 345 S.W.2d 706, 709–11 (1961), that after the time for instituting a regular appeal has elapsed, a party may attack a final judgment based on a claim of invalid service in only two ways, neither of which were invoked in this case.

Texas cases contain many obiter dicta indicating that courts may allow a collateral attack if the judgment is void based on a lack of personal jurisdiction resulting from a failure to validly serve a defendant with process. *See, e.g., Browning v. Prostok,* 165 S.W.3d 336, 346 (Tex.2005) (stating in obiter dictum that judgment is void and subject to collateral attack if the court rendering the judgment "had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act"); *Mapco, Inc. v. Forrest,* 795 S.W.2d 700, 703 (Tex.1990) (same); *Cook v. Cameron,* 733 S.W.2d 137, 140 (Tex.1987) (same); *Browning v. Placke,* 698 S.W.2d 362, 363 (Tex.1985) (same); *Austin Indep. Sch. Dist. v. Sierra Club,* 495 S.W.2d 878, 881 (Tex.1973) (same). However, in *McEwen,* the Texas Supreme Court held that, after the time has passed to timely file a motion for new trial or regular appeal, the exclusive means by which parties can challenge a final judgment based on an allegation that it is void for lack of service of process or lack of valid service of process are by filing a writ of error (now restricted appeal) or by filing a bill of review. 345 S.W.2d at 709–11 (holding that, once trial court has lost plenary power over a final judgment, the only means by which parties may challenge the judgment as being void for lack of service or lack of valid service is by writ of error

(now restricted appeal) or by bill of review). The Texas Supreme Court stated that its holding applied whether the challenge was characterized as a direct attack or as a collateral attack. *Id* at 710.

The Texas Supreme Court has not overruled or disapproved of its holding in *McEwen,* and this court must follow it. *See Lubbock County, Tex. v. Trammel's Lubbock Bail Bonds,* 80 S.W.3d 580, 585 (Tex.2002) (stating it is not the function of a court of appeals to abrogate or modify established precedent); *Nguyen v. Intertex, Inc.,* 93 S.W.3d 288, 294–96 & n. 3 (Tex.App.-Houston [14th Dist.] 2002, no pet.) (noting dicta from Texas Supreme Court and following *McEwen* holding in this regard). We conclude that after the time expired for filing a motion for new trial and direct appeal, a restricted appeal or a bill of review were the only available procedural avenues for Tarquis to attack the Texas Decree based on an allegation that the trial court lacked personal jurisdiction over her when it rendered the Texas Decree due to a failure to serve Tarquis with process or a failure to properly serve her with process. *See McEwen,* 345 S.W.2d at 709–11; *Nguyen,* 93 S.W.3d at 294–96.

Tarquis did not file a restricted appeal; however, she did file a bill of review in a separate proceeding in the trial court. Our record reflects that the trial court dismissed this bill of review because Tarquis filed it more than four years after the trial court rendered the Texas Decree. In the Enforcement Actions below, Skadden sought to enforce the Texas Decree, and the trial court granted Tarquis's motion to dismiss these actions on the ground that the Texas Decree is void because Tarquis was never validly served with process in the underlying divorce action. Tarquis's motion in response to the Enforcement Actions was not (1) a motion for a rehearing or regular appeal in the underlying

action, (2) a restricted appeal, or (3) a bill of review. Therefore, even if, due to a failure to serve Tarquis with process or a failure to validly serve her with process, the trial court lacked personal jurisdiction over Tarquis when it rendered the Texas Decree, binding precedent bars Tarquis from attacking the Texas Decree in the Enforcement Actions, rather than by a timely restricted appeal or bill of review. *See McEwen,* 345 S.W.2d at 709–11; *Nguyen,* 93 S.W.3d at 294–96. The trial court erred in granting Tarquis's motions to dismiss based on a lack of personal jurisdiction due to an alleged failure to validly serve Tarquis with process. *See id.; Nguyen,* 93 S.W.3d at 294–96.

Tarquis argues that the alleged voidness of the Texas Decree based on the alleged failure to properly serve Tarquis with process is fundamental error that can be raised at any time; however, the cases that Tarquis cites in support of this proposition are not on point. *See Tullos v. Eaton Corp.,* 695 S.W.2d 568, 568–69 (Tex. 1985) (stating that question of "jurisdiction" is fundamental and can be raised at any time in case that involved a lack of appellate jurisdiction rather than a failure to serve a party with process); *Cox v. Johnson,* 638 S.W.2d 867, 868 (Tex.1982) (holding that alleged failure to join an additional party cannot constitute fundamental error and stating that fundamental

error survives only in rare instances in which the record shows on its face that the court lacked "jurisdiction" or that the public interest is directly and adversely affected as that interest is declared in the statutes and constitution of this state); *In re J.B.W.,* 99 S.W.3d 218, 221 (Tex.App.-Fort Worth 2003, pet. denied) (holding that a complaint that the trial court lacked subject-matter jurisdiction raises fundamental error and can be made at any time on regular appeal, without addressing complaints regarding alleged failure to serve with process). Tarquis has not cited, and this court has not found, any Texas Supreme Court cases holding that the complaint involved in this case constitutes fundamental error.[5] Therefore, we must follow the *McEwen* case.

**B. Can this court affirm the trial court's dismissal of the Enforcement Actions based on the trial court's alleged lack of subject-matter jurisdiction over child custody issues?**

The trial court had subject-matter jurisdiction to make an initial child custody determination regarding Benjamin only if:

(1) Texas was Benjamin's home state on the date of the commencement of the divorce proceeding, or was Benjamin's home state within six months before the commencement of the proceeding and

**5.** We presume the constitutionality of all statutes and procedural law applicable in this case. *See Edgewood Indep. Sch. Dist. v. Meno,* 917 S.W.2d 717, 725 (Tex.1995). Tarquis has not challenged the constitutionality of the Texas procedural law that requires her complaint to be raised within four years of the rendition of the Texas Decree, and she has not alleged that she received no actual or constructive notice of the suit or Texas Decree until more than four years after the rendition of the Texas Decree. *See Peralta v. Heights Med. Ctr., Inc.,* 485 U.S. 80, 84–86, 108 S.Ct. 896, 899–900, 99 L.Ed.2d 75 (1988) (holding

that rendition of judgment against defendant without service of process violates the Due Process Clause of the United States Constitution if the defendant did not have actual or constructive notice of the suit or judgment in time to provide defendant with an opportunity to be heard, regardless of whether defendant had a meritorious defense). The trial court based its dismissal on an alleged failure to validly serve Tarquis with process; however, the trial court stated "I know that [Tarquis] had actual notice. I have no doubt that she had actual notice."

Benjamin is absent from this state but a parent or person acting as a parent continues to live in this state;

(2) a court of another state did not have jurisdiction under Subdivision (1), or a court of Benjamin's home state had declined to exercise jurisdiction on the ground that Texas is the more appropriate forum under section 152.207 or 152.208 of the Texas Family Code, and:

(A) Benjamin and his parents, or Benjamin and at least one parent or a person acting as a parent, had a significant connection with Texas other than mere physical presence; and

(B) substantial evidence was available in Texas concerning Benjamin's care, protection, training, and personal relationships;

(3) all courts having jurisdiction under (1) or (2) above had declined to exercise jurisdiction on the ground that a Texas court was the more appropriate forum to determine the custody of the child under section 152.207 or 152.208 of the Texas Family Code; or

(4) no court of any other state would had jurisdiction under the criteria specified in Subdivision (1), (2), or (3).

See TEX. FAM.CODE ANN. §§ 152.201(a), 152.204 (Vernon 2002). As used in this determination, "home state" means the state in which Benjamin lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of the underly-

ing divorce proceeding. *See id.* § 152.102(7) (Vernon 2002).

Tarquis moved to dismiss the Enforcement Actions based on her assertion that Skadden sought to enforce only the child custody portions of the Texas Decree and that, under section 152.201 of the Texas Family Code, the trial court lacked subject-matter jurisdiction to make the child custody determinations contained in the Texas Decree. Tarquis asserts, and we agree, that the trial court did not dismiss based on this argument; however, she asserts that this court may nonetheless affirm the trial court's dismissal of the Enforcement Actions on this basis. We presume, without deciding, that we can affirm the trial court's dismissal orders on this basis, and we address Tarquis's subject-matter jurisdiction argument.

■ To analyze this issue, we must determine whether Tarquis's attack on the Texas Decree was a direct attack or a collateral attack. Tarquis claims she asserted a direct attack against the Texas Decree in the trial court. Appellate courts have set forth different definitions of "direct attack" and "collateral attack."[6] *Compare Crawford v. McDonald,* 88 Tex. 626, 33 S.W. 325, 327 (1895) *with Texas Dep't of Transp. v. T. Brown Constructors, Inc.,* 947 S.W.2d 655, 659 (Tex.App.-Austin 1997, pet. denied). Nonetheless, we are bound by the Texas Supreme Court's holding in *Reiss v. Reiss* to conclude that Tarquis asserted a collateral attack on the Texas Decree.[7] *See* 118 S.W.3d 439, 440–

---

**6.** Tarquis cites two cases that contain definitions of "direct attack" and "collateral attack" but whose holdings do not apply to the facts of this case. *See Hogan v. City of Tyler,* 602 S.W.2d 555, 558–59 (Tex.Civ.App.-Tyler 1980, writ ref'd n.r.e.); *Motor Mortgage Co. v. Finger,* 200 S.W.2d 228, 230–31 (Tex.Civ. App.-Waco 1947, no writ). The definitions stated in these two cases derive from the definitions set forth by the Texas Supreme

Court in *Crawford v. McDonald,* 88 Tex. 626, 33 S.W. 325, 327 (1895).

**7.** Even if we had to address the definitions of "direct attack" and "collateral attack" asserted by Tarquis, we still would conclude that her attack was collateral. *See Crawford,* 33 S.W. at 327. Tarquis's motion in response to the Enforcement Actions was not (1) a motion for a rehearing or regular appeal in the un-

43 (Tex.2003) (holding that, in action to enforce divorce decree rendered 18 years earlier, ex-spouse's attempt to avoid the effect of the final decree by arguing decree was void constituted collateral attack on the decree).

 To sustain Tarquis's collateral attack based on her subject-matter jurisdiction argument, the trial court would have had to conclude that the record before the trial court from the underlying divorce proceeding affirmatively negates the existence of facts essential to the trial court's subject-matter jurisdiction; if the record is silent or supports subject-matter jurisdiction, then the trial court would not have been able to sustain the collateral attack. *See White v. White*, 142 Tex. 499, 179 S.W.2d 503, 506 (1944); *Etzel v. U.S. Dep't of Air Force*, 620 S.W.2d 853, 856 (Tex.Civ. App.-Houston [14th Dist.] 1981, writ ref'd n.r.e.).

In the Texas Decree, the trial court based its child-custody jurisdiction on section 152.201(a)(1) of the Texas Family Code. *See* Tex. Fam.Code Ann. § 152.201. After receiving evidence at trial, the trial court found that (1) it had jurisdiction over the case, (2) all prerequisites to the exercise of its jurisdiction had been satisfied, and (3) Benjamin's home state was Texas. These findings support the existence of subject-matter jurisdiction to make an initial child custody determination regarding Benjamin. *See id.* Tarquis points out that Skadden, in an affidavit contained in the petition on which the Texas Decree was based, testifies that Benjamin was born in Spain and had been in Texas for only 25 days before the date on which Skadden filed the divorce proceeding. However, this affidavit and petition would

not have precluded the associate judge from hearing evidence during the underlying trial that would support a finding that Benjamin lived in Texas with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of the underlying divorce proceeding. Skadden could have testified at trial in a manner that contradicted his affidavit, or another witness could have testified in support of such a finding.

Based on the evidence presented at trial, the trial court found that Benjamin's home state was Texas and that the court had jurisdiction. We do not know what evidence the associate judge heard during the bench trial of the underlying divorce proceeding because the court reporter, after the applicable statutory period for preservation expired, destroyed her notes without having transcribed them. Therefore, our record does not contain a reporter's record reflecting the evidence at trial. In the absence of a reporter's record from the bench trial, we presume that the evidence and other proceedings at trial supported the Texas Decree. *See Bandy v. First State Bank*, 835 S.W.2d 609, 614–15 (Tex. 1992) (rejecting collateral attack because it was based on record before the trial court at the time of the action being collaterally attacked and because the challenging party did not present a record of the proceedings in question); *see also Middleton v. Nat'l Fam. Care Life Ins. Co.*, No. 14–04–00428–CV, 2006 WL 89503, at *2 (Tex. App.-Houston [14th Dist.] Jan. 17, 2006, pet. denied) (mem.op.) (stating that there was no reporter's record of the trial and holding that, because appellant did not comply with Rule 34.6(c) and the appellate record did not contain a complete record of

derlying action, (2) a restricted appeal, or (3) a bill of review. By her motion to dismiss, Tarquis sought to avoid the effect and binding force of the Texas Decree in a proceeding that

was instituted to enforce the Texas Decree, not to amend, correct, reform, vacate, or enjoin the execution of the Texas Decree. *See id.*

the trial, this court would presume the omitted portions are relevant to the disposition of the appeal and support the trial court's judgment).

■ Even though Tarquis alleges fundamental error, this court still needs a record of the trial proceedings; otherwise, we presume they support the trial court's Texas Decree. *See Mason v. Our Lady Star of the Sea Catholic Church*, 154 S.W.3d 816, 821 (Tex.App.-Houston [14th Dist.] 2005, no pet.). We do not use the doctrine of fundamental error to alter the presumption that missing parts of the trial record support the trial court's judgment. *See id.* Therefore, we can only conclude that the record before the trial court from the underlying divorce proceeding did not affirmatively negate the existence of facts essential to the trial court's subject-matter jurisdiction over child custody issues. It would have been error for the trial court to dismiss the Enforcement Actions based on Tarquis's collateral attack asserting a lack of subject-matter jurisdiction.

While the trial court did not rely on this basis for dismissal in its findings of fact and conclusions of law, the trial court did state the following:

- Skadden's affidavit states Benjamin was only in Texas for 25 days before Skadden filed the Texas divorce proceeding;
- Any inconsistency between the docket sheet entry at the time of the divorce hearing on December 13, 1999 (indicating no jurisdiction over child custody issues) and the Decree is explained by "the sheer volume of cases and the inability to edit word for word the Decree proposed by aggressive counsel";
- The "docket sheet rendition in counsel's presence" during trial "is totally consistent with" a lack of jurisdiction over child custody issues.

Nonetheless, as discussed above, Skadden's affidavit does not overcome the presumption that the evidence at trial supported the trial court's finding that Texas was Benjamin's home state, as stated in the Texas Decree. Furthermore, even if we presume that the associate judge in the trial of the underlying divorce proceeding (1) made docket-sheet notations indicating no jurisdiction over child custody issues and (2) announced at some point during trial that it had no jurisdiction over child custody issues, these actions would not preclude the associate judge from hearing evidence at trial that would support the finding in the Texas Decree that Texas was Benjamin's home state. In dismissing the Enforcement Actions, the trial court did not find that, contrary to the Texas Decree, there was no evidence at trial in the divorce action to support a finding that the trial court had jurisdiction over child custody issues. The trial court did not dismiss the Enforcement Actions based on Tarquis's subject-matter jurisdiction argument, and it would have erred in doing so. *See Bandy*, 835 S.W.2d at 614–15; *White*, 179 S.W.2d at 506 (rejecting collateral attack because the record from the underlying proceeding did not affirmatively show that the court in question lacked subject-matter jurisdiction); *Etzel*, 620 S.W.2d at 856 (rejecting collateral attack of enforcement-action judgment, in part, because record from underlying proceeding showed court rendering judgment had subject-matter jurisdiction).

■ Tarquis also argues that the trial court lacked subject-matter jurisdiction to render the Texas Decree based on the pendency of the Spanish divorce proceeding that was filed before the Texas divorce proceeding. While the existence of a first-filed proceeding regarding the same subject matter in another jurisdic-

tion may raise various issues, including comity, this first-filed proceeding does not deprive the court in the second-filed case of subject-matter jurisdiction. *See Ex parte Jabara,* 556 S.W.2d 592, 596 (Tex. Civ.App.-Dallas 1977, orig. proceeding) (holding that pendency of previously filed divorce proceeding in foreign jurisdiction does not preclude Texas courts from exercising jurisdiction over the same controversy).

In sum, we cannot affirm the dismissal of the Enforcement Actions based on Tarquis's argument that the Texas Decree was void for lack of subject-matter jurisdiction as to child custody issues.[8] Accordingly, we sustain Skadden's second issue.[9]

## C. Rulings on Pending Motions

Skadden has filed a motion and supplemental motion in this court seeking sanctions against Tarquis. We conclude sanctions are not appropriate under the circumstances, and we deny Skadden's motions for sanctions. We strike Exhibits 1 and 4 attached to Tarquis's appellate brief as well as her "Notice to Court" and the attachments thereto (filed on May 9, 2006) as being outside the record. *See Nguyen,* 93 S.W.3d at 292–93 (striking documents filed on appeal that were not contained in appellate record because, with limited exceptions that do not apply, appellate courts may not consider documents outside of the appellate record). We deny Skadden's "Mo-

tion for Judgment Because of Judicial Estoppel" and strike the attachments to that motion, as well as the attachments to Tarquis's response in opposition thereto, because these attachments are outside the appellate record. *See id.* We strike Skadden's "Motion for Judgment" because in it Skadden seeks to assert additional appellate issues without leave of court. Finally, we deny Tarquis's "Motion to Dismiss Appeals; Alternatively, Motion to Render Opinions/Judgment in Favor of Appellee."

## IV. Conclusion

After the time expired for filing a motion for new trial and direct appeal, a restricted appeal or a bill of review were the only available procedural avenues for Tarquis to attack the Texas Decree based on an allegation that the trial court lacked personal jurisdiction over her when it rendered the Texas Decree due to a failure to serve her with process or a failure to properly serve her with process. Tarquis did not file a restricted appeal, and the trial court dismissed her bill of review because she filed it more than four years after the trial court rendered the Texas Decree. Tarquis's motion in response to the Enforcement Actions was not (1) a motion for a rehearing or regular appeal in the underlying action, (2) a restricted appeal, or (3) a bill of review. Therefore, even if, due to a failure to effect valid service of process, the trial court lacked personal jurisdiction over Tarquis when it

---

**8.** As previously noted, we presume the constitutionality of all statutes and procedural law applicable in this case. *See Meno,* 917 S.W.2d at 725. Tarquis has not challenged the constitutionality of the Texas procedural law that presumes the missing reporter's record supports the Texas Decree and that allows court reporters to destroy their notes after three years. Tarquis has not asserted a constitutional violation based on an allegation that she received no actual or constructive

notice of the suit or Texas Decree until after the court reporter had destroyed her notes of the trial proceedings. *See Peralta,* 485 U.S. at 84–86, 108 S.Ct. at 899–900. The trial judge noted his belief that Tarquis had actual notice of the Texas proceeding.

**9.** We need not and do not address Skadden's first, third, fourth, fifth, and seventh issues.

rendered the Texas Decree, binding precedent bars Tarquis from attacking the Texas Decree in the Enforcement Actions. The trial court erred in granting Tarquis's motions to dismiss based on an alleged lack of personal jurisdiction due to an alleged failure to validly serve Tarquis with process.

The record before the trial court from the underlying divorce proceeding did not affirmatively negate the existence of facts essential to the trial court's subject-matter jurisdiction over child custody issues. Therefore, it would have been error for the trial court to dismiss the Enforcement Actions based on Tarquis's collateral attack asserting a lack of subject-matter jurisdiction as to child custody issues.

For the reasons stated above, we sustain Skadden's second issue, reverse the trial court's dismissal orders in each of the cases below, and remand the cases for further proceedings consistent with this opinion.

## SUPPLEMENTAL OPINION

### KEM THOMPSON FROST, Justice.

On original submission, this court determined that the trial court erred in dismissing appellant Michael Skadden's enforcement actions against his ex-wife Ana Maria Tarquis Alfonso ("Tarquis") because, after the time expired for filing a motion for new trial and direct appeal, a restricted appeal or a bill of review was the only available procedural means for Tarquis to attack the decree based on an alleged failure to effect valid service of process on her. This court also presumed for the sake of argument there was no other impediment to affirming the trial court's dismissal orders based on its alleged lack of subject-matter jurisdiction over child-custody issues in the underlying divorce proceeding. Nonetheless, this court still concluded it could not affirm on this basis, in part because the record before the trial court from the underlying divorce action did not negate the existence of facts essential to the trial court's subject-matter jurisdiction over child-custody issues. We based this conclusion on the absence of a reporter's record from the 1999 trial of the underlying divorce action. Therefore, we reversed the trial court's orders dismissing the enforcement actions and remanded for further proceedings.

After issuance of the original opinion, the court received a supplemental reporter's record from the underlying divorce action. Tarquis now seeks to supplement the record in these appeals and, in her motion for rehearing, argues that the record before the trial court from the underlying divorce action negates the existence of facts essential to the trial court's subject-matter jurisdiction over child-custody issues. The trial court did not dismiss this suit based on Tarquis's subject-matter jurisdiction argument; however, before dismissing the enforcement actions, the trial court reviewed and took judicial notice of the entire file from the underlying divorce action. Because we do not have that file in our appellate record, the recently filed supplemental reporter's record does not afford an opportunity for this court to determine whether the entire record before the trial court affirmatively negates the existence of facts essential to subject-matter jurisdiction. Therefore, we conclude that the supplemental reporter's record is not relevant to any issue before this court. Accordingly, supplementation of the record would serve no purpose. We overrule Tarquis's motion for rehearing.

### I. SUMMARY OF RELEVANT

## FACTS[1]

In his 1999 divorce petition, Skadden sought a decree of divorce, property division, and an initial child-custody determination as to the only child of the marriage, a son. At trial,[2] on December 13, 1999, Skadden appeared along with counsel. Tarquis did not appear in person or through counsel. After receiving evidence, the presiding judge of the trial court signed a divorce decree (hereinafter "Texas Decree"). The Texas Decree adjudicated property and child-custody issues, and stated the following:

(1) Tarquis had adequate notice of the divorce proceedings, and due process of law had been satisfied.

(2) Tarquis was wholly in default.

(3) The trial court, after receiving evidence, found that it had jurisdiction of this case. All prerequisites to the exercise of its jurisdiction were duly satisfied.

(4) Texas is the child's home state.

No party timely filed a post-judgment motion, regular appeal, restricted appeal, or bill of review regarding this final divorce decree.

More than four years after the trial court rendered the Texas Decree, Skadden filed a petition for interference with possessory rights and a motion for enforcement of the Texas Decree, which provides that both Skadden and Tarquis are joint managing conservators of their son. On the same day, Skadden also filed an application for writ of habeas corpus. The habeas corpus action has a separate cause number from the proceeding containing the petition for interference with possessory rights and the motion for enforcement. In this supplemental opinion, we refer to both of these enforcement cases collectively as the "Enforcement Actions."

In response to the Enforcement Actions, Tarquis filed several motions, asserting, among other things, the following:

● When Tarquis filed the motions and when the trial court rendered the Texas Decree, the trial court lacked subject-matter jurisdiction over child-custody issues under Chapter 152 of the Texas Family Code.

● The Texas Decree is void because Tarquis was not validly served with process before the rendition of the Texas Decree.

Tarquis's motions were set for hearing on December 27, 2004. Several days before that hearing, the trial court faxed a handwritten letter to counsel,[3] which the trial court read during the hearing. Tarquis's counsel argued the trial court need go no further than Skadden's divorce petition to conclude that it lacked subject-matter jurisdiction to make an initial child-custody determination under section 152.201 of the Texas Family Code. The trial court stated that it was relying on the lack of valid service of process on Tarquis and then took judicial notice of everything in its file in the underlying divorce case. The trial court determined that there had been no valid service of process in the divorce pro-

---

1. The factual background of this case is set forth in detail in our original opinion in this appeal. *See Skadden v. Alfonso*, No. 14–05–00488–CV, 2006 WL 3072040, at *1–6 (Tex. App.-Houston [14th Dist.] Oct. 31, 2006, no pet. h.). In this supplemental opinion, we address only the factual background relevant to the issues at hand.

2. The associate judge who presided over the December 1999 trial later became the presiding judge of the trial court and rendered the dismissal orders that are the subject of this appeal.

3. Our original opinion contains the full text of this letter. *See Skadden*, 2006 WL 3072040, at *3.

ceeding, and consequently, the trial court concluded the Enforcement Actions failed because the trial court did not have personal jurisdiction when the Texas Decree was rendered. After adding the notation "12/27/04 (per hearing)" to the top of the letter faxed to counsel the previous week, the trial court filed the document with the papers of the court. At that time, this was the only writing reflecting the trial court's ruling.

A few weeks later, on January 14, 2005, the trial court signed an order dismissing with prejudice Skadden's motion for enforcement and petition for interference with possessory rights. The dismissal was based on the trial court's finding that Tarquis had not been served with process in the underlying divorce action in compliance with the Texas Rules of Civil Procedure. On the same day, the trial court signed an order dismissing with prejudice Skadden's application for a writ of habeas corpus.[4] In its findings of fact and conclusions of law,[5] the trial court confirmed that it had dismissed the Enforcement Actions based on its finding that Tarquis had not been validly served with process. The trial court indicated that dismissal was not based on Tarquis's argument that the trial court lacked subject-matter jurisdiction to make an initial child-custody determination.

On original submission, we held the trial court erred in dismissing the Enforcement Actions because, after the time expired for filing a motion for new trial and direct appeal, a restricted appeal or a bill of review were the only available procedural means for Tarquis to attack the Texas Decree based on an alleged failure to effect valid service of process on her. This court presumed for the sake of argument there was no other impediment to affirming the trial court's dismissal orders based on its alleged lack of subject-matter jurisdiction over child-custody issues in the underlying divorce proceeding. Still, we concluded we could not affirm on this basis, in part because the record before the trial court from the underlying divorce action did not negate the existence of facts essential to the trial court's subject-matter jurisdiction over child-custody issues. We based this conclusion on the absence of a reporter's record from the trial of the underlying divorce action. In his appellate brief, Skadden indicated that the court reporter had destroyed her notes from the underlying trial before any party had requested that she transcribe them. *See* TEX. GOV'T CODE ANN. § 52.046(a)(4) (Vernon 2005) (requiring court reporters to preserve their notes for only three years from the date on which they were taken). Tarquis did not contradict Skadden's factual assertions in this regard, nor did she attempt to supplement the record with the record from the 1999 trial in any respect at any time prior to this court's issuance of its opinion.

After this court issued its opinion, reversing the trial court's orders dismissing the Enforcement Actions and remanding for further proceedings, Tarquis, apparently for the first time, undertook to determine the status of the court reporter's notes from the 1999 divorce proceeding.

**4.** At a prior hearing, Tarquis's trial counsel stated that she had no knowledge there were two different cause numbers, and Tarquis never filed anything in the habeas action. Nonetheless, the trial court signed an order in the habeas action granting a motion Tarquis had filed in the other case. The trial court apparently treated all of Tarquis's filings and arguments as having been asserted in both cases, and, for the purposes of this appeal, we presume likewise.

**5.** After Skadden initiated these appeals from both dismissal orders, this court abated the appeals so that the trial court could file findings of fact and conclusions of law.

Her counsel contacted the court reporter in the underlying divorce trial, who is also the current official court reporter for the trial court. Tarquis's counsel was informed that the court reporter had not destroyed her notes from the divorce trial.[6] Even though this reporter's record was not before the trial court when it rendered the orders from which Skadden appealed in this case, Tarquis's counsel, in an attempt to show a lack of subject-matter jurisdiction in this court, requested the court reporter to transcribe these notes.

A week before Tarquis filed her motion for rehearing,[7] and more than a month after this court issued its opinion and judgment, the court reporter for the trial court filed in this court the reporter's record from the 1999 divorce trial—or at least some of it. This reporter's record (hereinafter "Supplemental Reporter's Record") did not contain the twelve exhibits that were admitted into evidence at the trial. When Tarquis filed a motion to supplement the record with this reporter's record, Skadden filed a motion to strike this supplemental record. We consider the motion to supplement and the motion to strike in conjunction with Tarquis's motion for rehearing, in which she argues that the Supplemental Reporter's Record negates the trial court's subject-matter jurisdiction over child-custody issues and thus, if permitted to be filed, would provide grounds for this court to reverse course, grant rehearing, withdraw the opinion on original submission, and issue a new opinion affirming the trial court's dismissal of the Enforcement Actions.

## II. ISSUE AND ANALYSIS

■ In urging the court to rehear the case, Tarquis asserts a single issue:

The recently discovered reporter's record of the December 13, 1999 default judgment [sic] negates the existence of facts essential to subject matter jurisdiction; the trial court lacked subject matter jurisdiction over [the child.]

Thus, the threshold inquiry is whether this court should exercise its discretion to allow the record to be supplemented after this court has issued its opinion and judgment.

Under Rule 34.6(d), "[i]f anything relevant is omitted from the reporter's record, the trial court, the appellate court, or any party may by letter direct the official court reporter to prepare, certify, and file in the appellate court a supplemental reporter's record containing the omitted items." TEX. R. APP. P. 34.6(d). Relying on this rule, Tarquis asserts this court should allow the Supplemental Reporter's Record because it is relevant in that it allegedly shows the trial court lacked subject-matter jurisdiction over the child-custody provisions of the Texas Decree (hereinafter "Custody Provisions"). Tarquis concedes that it is quite unusual to supplement the appellate record after the appellate court has issued its opinion and judgment. She is correct.

■ Although appellate courts strive to decide cases on the merits rather than on procedural technicalities, supplementing the record after a case is decided (especially when the parties had ample opportunity to correct the omission prior to decision) and reconsidering the prior decision does not serve judicial economy and does not violate this general policy. *See Worthy v. Collagen Corp.*, 967 S.W.2d 360, 366 (Tex.

---

6. In response to Tarquis's motion to supplement, Skadden asserts this court reporter told him repeatedly that the notes from the divorce trial no longer existed.

7. This court granted Tarquis an extension of time to file her motion for rehearing.

1998); *see also Texas First Nat'l Bank v. Ng,* 167 S.W.3d 842, 866 (Tex.App.-Houston [14th Dist.] 2005, pet. granted, judgm't vacated w.r.m.) (refusing to consider supplemental record filed more than a month after court's opinion and judgment). Therefore, we have substantial discretion not to consider supplements to the appellate record that are filed after issuance of the opinion and rendition of the judgment. *See Worthy,* 967 S.W.2d at 366; *Texas First Nat'l Bank,* 167 S.W.3d at 866.

During the briefing stage of this appeal, Tarquis did not challenge Skadden's factual assertion concerning the status of the court reporter's notes from the 1999 divorce trial. Tarquis has not explained why she did not attempt earlier to determine whether the court reporter's notes existed. Nor has Tarquis explained why she could not have taken the same action on or before original submission that she took after this court issued its opinion. The extraordinary and unexplained delay are circumstances that do not weigh in favor of allowing supplementation of the record at this late date.

But even if Tarquis were allowed to supplement and even if she could show that the trial court record from the underlying divorce proceeding affirmatively negated the existence of facts essential to the trial court's subject-matter jurisdiction under Chapter 152 of the Texas Family Code, that lack of subject-matter jurisdiction would apply only to the Custody Provisions. *See* TEX. FAM. CODE ANN. §§ 152.201(a), 152.204 (Vernon 2002). Such a showing would not void the entire underlying divorce proceeding, and the Texas Decree still would be valid and binding as between Skadden and Tarquis as to all issues other than child custody.

Furthermore, if Tarquis is correct, then it might mean that Skadden could not enforce the Custody Provisions because the trial court in the underlying divorce proceeding lacked subject-matter jurisdiction over child-custody issues, but that would not end the court's inquiry. Though Skadden, in the Enforcement Actions, sought only to enforce the Custody Provisions, the trial court had subject-matter jurisdiction to enforce decrees such as the Texas Decree, and it is not clear that it would be a determination of subject-matter jurisdiction, as opposed to a decision on the merits, if the trial court were to deny enforcement of the Custody Provisions due to a lack of jurisdiction as to these matters in the underlying divorce proceeding.

***Collateral Attack on a Final Order in a Prior Proceeding For the First Time on Appeal***

Based on the Supplemental Reporter's Record, Tarquis asserts on rehearing a collateral attack on the prior, final Texas Decree. Under precedent from the Supreme Court of Texas, this challenge is a collateral attack on a final decree from a prior proceeding. *See Reiss v. Reiss,* 118 S.W.3d 439, 440–43 (Tex.2003) (holding that, in action to enforce final divorce decree, ex-spouse's attempt to avoid the effect of prior, final decree by arguing decree was void constituted collateral attack on the decree). In the Enforcement Actions in the trial court, Tarquis did assert a collateral attack as to the Custody Provisions. However, this collateral attack was based on Skadden's live petition (including the affidavit contained therein) in the divorce proceeding, not on a reporter's record from the divorce trial. On rehearing in this court, Tarquis asserts for the first time a collateral attack on the Custody Provisions based on the Supplemental Reporter's Record.[8] The parties have not

---

**8.** There is nothing in the record to indicate

Tarquis could not have obtained the Supple-

cited, and this court has not found, any Texas case in which an appellate court sustained a collateral attack asserted for the first time on appeal.

### The Absence of Record Items from the Underlying Divorce Proceeding

In any event, we presume, without deciding, the following:

(1) A determination that Skadden could not enforce the Custody Provisions because the trial court lacked subject-matter jurisdiction over child-custody matters in the underlying divorce proceeding would be a determination that the trial court lacks subject-matter jurisdiction in the Enforcement Actions.

(2) This court can sustain a collateral attack on a part of the trial court's prior, final decree for the first time on appeal.

Nonetheless, as we noted on original submission, a collateral attack such as that asserted by Tarquis on rehearing requires consideration of the evidence and proceedings from the divorce trial and the trial court's record at the time it rendered the Texas Decree. *See White v. White,* 142 Tex. 499, 179 S.W.2d 503, 506 (Tex.1944); *Skadden v. Alfonso,* No. 14–05–00488–CV,

2006 WL 3072040, at *10–11 (Tex.App.-Houston [14th Dist.] Oct. 31, 2006, no pet. h.); *Etzel v. U.S. Dep't of Air Force,* 620 S.W.2d 853, 856 (Tex.Civ.App.-Houston [14th Dist.] 1981, writ ref'd n.r.e.). As noted in our prior opinion in this case, the trial court reviewed its entire file from the underlying divorce proceeding and took judicial notice of this file. Although it did not consider the evidence presented during the divorce trial in ruling on Tarquis's motions, the trial court did consider the clerk's record that was before it when it rendered the Texas Decree. *See Skadden,* 2006 WL 3072040, at *3–4. However, because the trial court simply reviewed and took judicial notice of this record in rejecting Tarquis's collateral attack on the Custody Provisions, we do not have the entire clerk's record from the underlying proceeding in our appellate record. Even indulging the above presumptions and even if we reviewed the Supplemental Reporter's Record, we still would be unable to rule on the collateral attack Tarquis asserts on rehearing.[9] *See White,* 179 S.W.2d at 506; *Skadden,* 2006 WL 3072040, at *10–11.

We conclude the Supplemental Reporter's Record is not relevant to any issue we can decide in this appeal. *See* TEX. R.

---

mental Reporter's Record before this case was submitted on appeal or before the trial court ruled on Tarquis's motions to dismiss. In her motion to supplement the appellate record and subsequent filings, Tarquis has indicated that her new lead appellate counsel promptly determined that the court reporter had not destroyed her notes and requested that they be transcribed after Tarquis first inquired into this matter following the issuance of this court's opinion on original submission. If Tarquis had made this inquiry before the trial court's ruling on her motions to dismiss, there is every reason to believe the trial court could have had the benefit of considering the collateral attack Tarquis now asserts.

**9.** Tarquis cites various cases for the proposition that subject-matter jurisdiction is fundamental and lack thereof can be raised for the first time on appeal. However, all of the cases Tarquis has cited involve a direct appeal from the judgment challenged for lack of subject-matter jurisdiction. The case before us involves an appeal from an order sustaining one attack by Tarquis on the Texas Decree (assertion of an alleged failure to effect valid service of process) which Tarquis now argues should be affirmed based on a collateral attack asserting a different argument (the trial court's alleged lack of subject-matter jurisdiction over child-custody matters in the underlying divorce proceeding based on the Supplemental Reporter's Record). Therefore, the cases Tarquis cites are not on point.

APP. P. 34.6(d). Therefore, we decline to consider the Supplemental Reporter's Record. *See Zoya Enters. v. Sampri Invests., L.L.C.,* No. 14–04–01158–CV, 2006 WL 1389582, at *3–4 (Tex.App.-Houston [14th Dist.] May 23, 2006, no pet.) (refusing to consider post-submission supplemental record) (mem.op.); *Texas First Nat'l Bank,* 167 S.W.3d at 865–66 (refusing to consider supplemental record filed more than a month after this court's opinion and judgment on appeal). Because Tarquis bases her only motion-for-rehearing argument on the Supplemental Reporter's Record, we overrule Tarquis's motion for rehearing.[10]

Nothing in the opinion on original submission or this supplemental opinion prevents the trial court from considering, on remand, Tarquis's collateral attack on the Custody Provisions based on the legal standard set forth in these opinions.

---

**10.** Skadden conditioned his December 21, 2006 motion to supplement on this court's granting of Tarquis's motion to supplement. Because the latter event did not occur, we need not address this motion.